Todd M. Friedman (SBN 216752)
Meghan E. George (SBN 274525)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
mgeorge@toddflaw.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALAN KHEEL,** individually and on behalf of all others similarly situated, | ) ) ) Case No. 2:22-cv-03376-AB-AS ) |
| Plaintiff, | ) **CLASS ACTION** ) |
| vs. | ) **FIRST AMENDED COMPLAINT** ) **FOR VIOLATIONS OF:** ) |
| **FCA US LLC,** | ) 1. Violation of the Business and ) Professions Code Sections 17200 ) *et seq.* (California Unfair ) Competition Law); |
| Defendant. | ) 2. Violation of the Business and ) Professions Code Section 17500; ) 3. Breach of Contract; ) 4. Violation of the Consumer Legal ) Remedies Act (Cal. Civ. Code ) Section 1750 *et seq.*). |
| _____ | ) |

# I. INTRODUCTION

1.    This is a putative class action case brought on behalf of all purchasers of vehicle service contracts ("service plans"), marketed, and/or sold by FCA US LLC ("Defendant") in California.

2.    Through unlawful, deceptive and unfair course of conduct, Defendant, marketed, and/or sold service plans throughout the United States (and in California) with the false representation that Plaintiff and others similarly situated could cancel the service plan at any time by following the procedures described in the service plan contract.

3.    Through unlawful, deceptive and unfair course of conduct, Defendant marketed, and/or sold the service plans throughout the United States with the false representation that Defendant's service plans could be canceled at any time by following the procedures described in the service plan contract. In fact, however, Defendant did not intend to honor the cancellation requests of Plaintiff and others similarly situated, in violation of California law.

4.    Plaintiff further alleges that such conduct by Defendant constitutes breach of contract.

# II. PARTIES

5.    Plaintiff, ALAN KHEEL ("Plaintiff"), is a natural person residing in Los Angeles County in the State of California.

6.    Defendant, FCA US LLC ("Defendant") is a company incorporated in the state of Delaware and with its principal place of business in Michigan. Defendant is licensed to do business in the State of California, and does in fact do business in California by selling service plans to consumers, such as those sold to Plaintiff and others similarly situated, in the State of California.

### III.  JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) because brings this First Amended Complaint on behalf of a putative class with members in excess of 100. The aggregate damages suffered by the Class Members far exceed the $5,000,00.00 amount in controversy requirement of 28 U.S.C. § 1332(d)(2). Moreover, Plaintiff is a citizen of California, and Defendant is a citizen of Delaware and Michigan. Thus, the diversity requirements of 28 U.S.C. § 1332(d)(2) are satisfied. Therefore, this court has jurisdiction over this matter.

8.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because Defendant does business within the State of California and Plaintiff resides within this district.

### IV.  GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.    Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 13, inclusive, as though fully set forth herein.

10.    Defendant markets and/or sells vehicle service plans, such as the service plans marketed and sold to Plaintiff and others similarly situated.

11.    Specifically, Defendant advertises its service plans as having a money back guarantee

12.    Defendant requires all consumers who purchase a service plan to enter into a written contract detailing the terms of the service plan.

13.    On information and belief, the service plan contracts which Defendant enters into with consumers, such as Plaintiff and others similarly situated, contain substantially the same cancellation policy.

14.    Defendant's service plan contracts with consumers, such as Plaintiff and others similarly situated, state that the consumer has the option to "CANCEL the remaining Plan coverage and receive a full or pro-rata refund."

15.    Defendant's service plan contracts further state that consumers "may email or fax your cancellation request along with your Plan Provisions, proof of payoff and current mileage on the vehicle to" Defendant's cancellation department.

16.    Contrary to the representation, Defendant had no intention of allowing consumers, such as Plaintiff and others similarly situated, to cancel or receive a refund.

17.    Defendant marketed, and continues to market, and represent to the general public that the service plans can be cancelled by consumers.  In addition, Defendant fraudulently concealed the material facts at issue herein by failing to disclose to the general public its intention to not honor cancellation requests.  The disclosure of this information was necessary to make Defendant's representation not misleading for want of disclosure of these omitted facts.  Defendant possesses superior knowledge of the true facts which were not disclosed, thereby tolling the running of any applicable statute of limitations.

18.    Consumers are particularly vulnerable to these deceptive and fraudulent practices.  Most consumers possess very limited knowledge of the likelihood that sellers of service plans will not honor their cancellation policies. This is a material factor in many individuals' purchasing decisions, as they believe they are able to cancel the service plan and get their money back if they are not satisfied with the service plan.

## V. THE PLAINTIFF'S TRANSACTION

19.    In or around July of 2021, Plaintiff spoke with an agent of Defendant to inquire about a service plan.

20.    Defendant's agent informed Plaintiff that the service plan came with a money back guarantee, such that Plaintiff would receive a full refund if he cancelled, for any reason, within the first 60 days of the service plan. If he cancelled after 60 days, he would receive a prorated refund.

21.    On or around July 29, 2021, Plaintiff entered into a contract for a service plan with Defendant.

22.    The service plan was set to going to effect on or around August 18, 2021.

23.    The service plan was for Plaintiff's 2018 Jeep Grand Cherokee, Vehicle Identification Number 1C4RJFCG4JC458124.

24.    On or around July 29, 2021, Plaintiff received confirmation of the terms of his service plan via email.

25.    The terms of Plaintiff's service plan are attached hereto as EXHIBIT A.

26.    On or around September 30, 2021 Plaintiff sold his 2018 Jeep Grand Cherokee.

27.    As such, Plaintiff no longer had a need for the service plan he had purchased from Defendant.

28.    On or around October 4, 2021, Plaintiff emailed his cancellation request to Defendant's cancellation department at MVPCancellations@fcagroup.com, as instructed by the terms of his service plan.[1]

---

[1] The service plan states its cancellation policy as follows: "If you are the original purchaser of the Plan, and coverage under the Plan has not expired or been

29.     Defendant did not respond to this request.

30.     On October 18, 2021, Plaintiff emailed a second cancellation request to Defendant's cancellation department at the same email address, as instructed by the terms of his service plan.

31.     Defendant did not respond to this request.

32.     On October 21, 2021, Plaintiff faxed a second cancellation request to Defendant's cancellation department at fax number 833-990-0065, as instructed by the terms of his service plan.

33.     Defendant did not respond to this request.

34.     Frustrated by Defendant's lack of response, Plaintiff called Defendant's customer service department on or around November 11, 2021.

35.     The woman that Plaintiff spoke to informed him that Defendant does not accept faxes, despite the language to the contrary in Plaintiff's service plan that he may "fax [his] cancellation request . . . to Vehicle Protection Cancellation Department MVPCancellations@fcagroup.com Fax# 833-990-0065."

36.     Moreover, the customer service representative was unable to confirm that Plaintiff's cancellation requests had been received, and instead instructed Plaintiff to be patient.

37.     On or around December 10, 2021, Plaintiff sent a letter to Defendant to express his frustration and further request a cancellation and refund of his service plan. That letter is attached hereto as EXHIBIT B.

38.     Defendant did not respond to this letter.

---

terminated, you may cancel if you have not authorized transfer of Plan coverage to a new owner. To cancel the Plan you may take your Plan to any Dealer . . . If there is no Dealer in your area, you may email or fax your cancellation request along with your Plan Provisions, proof of payoff and current milage on the Vehicle to: Vehicle Protection Cancellation Department MVPCancellations@fcagroup.com Fax# 833-990-0065."

39.    In each case when Plaintiff, and others similarly situated, purchased a service plan from Defendant, they relied on Defendant's representations regarding its cancellation policy, which is typical of most U.S. consumers, and they were deceived as a result of Defendant's actions.  In fact, Plaintiff would not have purchased the service plan if it weren't for the misrepresentation of the aforementioned material fact, or would have paid significantly less for the service plan.

40.    Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendant as a result of Defendant' false representations about its cancellation policy.

41.    Plaintiff and Class Members were undoubtedly injured as a result of Defendant' false representations that are at issue in this litigation.

42.    61.    On or about April 18, 2022, through his Counsel of record, using certified mail with a return receipt requested, Plaintiff served Defendant with notice of their violations of the CLRA (attached hereto as EXHIBIT C), and asked that Defendant correct, repair, replace or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and pointed Defendant to the provisions of the CLRA that Plaintiff believes to have been violated by Defendant. Defendant has not replied to this correspondence in a satisfactory manner, and have thereby refused to timely correct, repair, replace or otherwise rectify the issues raised therein.

## VI. CLASS ACTION ALLEGATIONS

43.    Plaintiff hereby re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

44.    Plaintiff brings this action individually and behalf of all others similarly situated in the State of California who purchased a service plan from

Defendant ("The Class"). Specifically, excluded from The Class is any persons who have a controlling interest in Defendant, and of Defendant's parent companies, subsidiaries, and Defendant's officers, directors, managers, shareholders and members of their immediate families; and their heirs, successors and assigns pursuant to Code of Civil Procedure § 382 and Business & Professions Code § 17200 *et seq.* The Class also does not include any persons who previously filed suit against Defendant for similar violations of California law and/or the Honorable Judge assigned to this case and their court staff.

45.    Plaintiff also brings this action individually and behalf of a subclass comprised of all consumers in the State of California who purchased a service plan from Defendant, and timely attempted to cancel that service plan, but whose cancellation requests were not honored by Defendant ("The Subclass," and together with The Class, "The Classes"). Specifically, excluded from The Subclass is any persons who have a controlling interest in Defendant, and of Defendant's parent companies, subsidiaries, and Defendant's officers, directors, managers, shareholders and members of their immediate families; and their heirs, successors and assigns pursuant to Code of Civil Procedure § 382 and Business & Professions Code § 17200 *et seq.* The Class also does not include any persons who previously filed suit against Defendant for similar violations of California law and/or the Honorable Judge assigned to this case and his or her court staff.

46.    A sufficient similarity exists with respect to the service plans that Plaintiff and The Class have purchased in that the service plans are similar via the representations Defendant made about its cancellation policy. If there is a sufficient similarity between the service plans, any concerns regarding material differences in the products can be addressed at the class certification stage. *Anderson v. Jamba Juice Co.,* 888 F.Supp.2d 1000,1006 (N.D. Cal. 2012).

47.    Defendant and its employees or agents are excluded from the Class.

Plaintiff does not know the number of members in the Class, but believes that the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditions litigation of this matter.

48.    The members of The Classes are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  On information and belief, the exact number and identities of the members of The Class are ascertainable from the records in Defendant' possession.

49.    There is a well-defined community of interest in the questions of law and fact involved in this case.

50.    All causes of action herein have been brought and may properly be maintained as a class action pursuant to the provisions of the Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable:

a.    **Numerosity**: On information and belief, The Classes are so numerous that the individual joinder of all members would be impracticable.

b.    **Common Questions Predominate**: Common questions of law and fact exists as to all members of The Classes, and those questions clearly predominate over any questions that might affect members individually.  These commons questions of law and fact include, for example, whether Defendant' actions in the regard constitute an unfair, unlawful, or fraudulent business practice pursuant to Section 17200 et seq. of the California Business & Professions Code. The proposed classes are readily definable.

c.    **Typicality**: On information and belief, Plaintiff's claims are typical of the claims of the members of The Classes.  Plaintiff and all members of The Classes sustained damages arising out of Defendant's common course of

conduct complained herein.

       d. **<u>Adequacy</u>**:  Plaintiff will fairly and adequately protect the interest of the members of The Classes because Plaintiff has no interests which are adverse to the interest of absent class members and because Plaintiff has retained counsel who possesses significant litigation experience regarding alleged violations of consumer statutes.

       e. **<u>Superiority</u>**: A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members would be impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since most class members' individual claims for damages are likely to be modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of The Classes to redress the wrongs done to them.   An important public interest will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized and the potential for inconsistent or contradictory judgments will be avoided.

## <u>COUNT I: VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *et seq.*</u>

51.    Plaintiff reincorporates by reference all of the preceding paragraphs.

52.    Plaintiff and Defendant are each "person[s]" as defined by California Business and Professions Code section 17201. California Business and Professions Code section 17204 authorizes a private right of action on both an individual and representative basis.

53.    "Unfair competition" is defined by Business and Professions code section 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent business act or practice, and (4) "unfair, deceptive, untrue, or misleading advertising." The definitions in section 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

54.    A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm–that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

55.    By and through Defendant's conduct alleged in further detail herein, Defendant engaged in conduct that constitutes unlawful, unfair, and/or fraudulent business practices and advertising as prohibited by Bus. & Prof. Code §§ 17200, et seq.

## UNLAWFUL

56.    California Business and Professions code Section 17200, et seq. prohibits "any unlawful…business act or practice."

57.    As explained above, Defendant deceived and invaded the rights of Plaintiff and other Class Members by representing that they could cancel their service plans pursuant to the terms in the contract and get a refund. In fact, however, Defendant had no intention of honoring Plaintiff and other Class Members' cancellation requests. As such, Defendant denied Plaintiff and other putative class members the benefit of the bargain by providing them with a

service plan they would have paid less for, had they known Defendant's true cancellation policy.

58.    Beginning at a date currently unknown and continuing through the time of this Complaint, Defendant committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, by falsely representing that consumers could cancel their service plans at any time, when in fact Defendant had no intention of honoring those cancellation requests, in violation of Bus. & Prof. Code §§ 17500, *et seq.*

59.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to pay a higher price for the service plans in violation of California Business and Professions Code Section 17500, *et seq.* Had Defendant not falsely advertised, marketed, or misrepresented the its cancellation policy, Plaintiff and Class Members would have purchased alternative products, or would have paid less for the service plans. Defendant's conduct therefore caused, and continues to cause, economic harm to Plaintiff and Class Members.

60.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## UNFAIR

61.    Defendant has engaged in a pattern of "unfair" business practice in violation of Bus. & Prof. Code §§ 17200, *et seq.*, by distributing, and/or

marketing that consumers can cancel their service plans and receive a refund at any time, resulting in a competitive disadvantage to other service plan providers who do not provide such a money back guarantee.

62.     The gravity of those misrepresentations outweighs any alleged benefits attributable to such conduct; and such conduct is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, in that consumers are led to believe that they can cancel their service plans and get their money back, when in fact they cannot.

63.     Defendant's website, advertisements, agents, and contracts mislead and deceive consumers into believing that they can cancel their service plans at any time and receive a refund, which as discussed above, is untrue and misleading.

64.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to Purchasers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

65.     UCL cases have applied a variety of tests for what constitutes an "unfair" business practice. *See Durrell v. Sharp HealthCare*, 183 Cal. App.. 4th 1350, 1365 (2010). Here, the Plaintiff satisfies all three.

66.    The FTC test requires a Purchaser to show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to Purchasers or competition; and, (3) is not one that Purchasers themselves could reasonably have avoided.

67.    Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell service plans that do not bear the characteristics that were advertised. Accordingly, Plaintiff and class members were injured because they paid money for a product that was of substantially less value than they reasonably believed, and were denied the benefit of the bargain.

68.    Such conduct involves equitable remedies in the form of a return of part of the purchase price of the product. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

69.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any Purchaser. Defendant falsely represented that consumers could cancel their service plans at any time and receive a refund, when in fact Defendant had no intention of honoring those cancellation requests. As such, the service plan Plaintiff purchased and owned did not bear the characteristics that were advertised with respect to the cancellation policy. Plaintiff forewent purchasing other service plans as a result of Defendant's misrepresentations. Once Plaintiff had purchased the service plan, Plaintiff was unable, without experiencing a substantial loss, to switch to another service plan. Therefore, Defendant denied Plaintiff and other similarly situated consumers the benefit of the bargain that they reasonably expected to receive at the time of purchase.

70.    Another test for unfairness under the UCL is the antitrust test, which analyzes whether the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because it effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co..*, 20 Cal. 4th 163, 187 (1999).

71.    By deceiving Plaintiff and members of the class into purchasing service plans under false pretenses, Defendant has gained an unfair advantage in the marketplace and has hindered competition. Class Members, including Plaintiff, are now stuck with service plans that do not bear the characteristics they were marketed as having. As a result, Defendant has unfairly usurped the business of competitors, and artificially been able to raise the price of its products. Defendant's actions tend to harm competition in the service plan market by reducing competition in the marketplace due to consumer perceptions regarding Defendant's cancellation policy,  as a result of Defendant's misrepresentations. Defendant's misrepresentations do not offer any countervailing benefit to the marketplace.

72.    Defendant's misrepresentation as to the service plans' cancellation policy is a ruse meant to deceive consumers into believe that they can cancel their service plans at any time and receive a refund, when in fact Defendant will not honor those cancellation requests. As such, Defendant duped consumers such as Plaintiff and Class Members into paying a higher price for a service plan that they could not actually cancel and receive a refund for. Such acts thereby prevent competition of third-party competitors who sell other service plans with similar features, but whose products are passed over by consumers in favor of Defendant under false pretenses.

73.     A third test for determining unfairness under the UCL is a balancing test as to whether the business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999).

74.     Here all of these factors weigh heavily in favor of this Court finding that Defendant's business practices are unfair.

75.     Defendant took advantage of the market and of consumers by misrepresenting the characteristics of its products to the general public, as discussed above. Such conduct is injurious to consumers insofar as it promises a product bearing certain characteristics, when in fact the product bears characteristics that are inherently and facially of less value. Accordingly, consumers were deprived of the benefit of the bargain of what they sought to purchase and reasonably believed they had purchased at the point of sale. There is no moral, ethical, or economic justification for this conduct, and it is inherently immoral and unscrupulous for Defendant to have done this to its customers.

76.     In so doing, Defendant has acted immorally, unethically, oppressively, unscrupulously, and has caused a substantial injury to consumers as detailed above.

77.     Plaintiff can use a benefit of the bargain approach, discrete choice analysis, or other economically-sound methods of damage calculations to ascertain the harm suffered by Class Members.

78.     Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these Purchasers could have reasonably avoided.

79.     Thus, Defendant's conduct has violated the "unfair" prong of California Business and Professions Code § 17200.

**FRAUDULENT**

80.    Beginning at a date currently unknown and continuing through the time of this Complaint, Defendant engaged in acts of unfair competition, including those described herein, by engaging in a patter of "fraudulent" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, by falsely representing its cancellation policy.

81.    Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

### "UNFAIR, DECEPTIVE, UNTRUE, OR MISLEADING"

82.    Defendant's practices are unfair, deceptive, untrue, or misleading in that consumers are led to believe that they can cancel their service plans at any time and receive a refund.

83.    Plaintiff and the public, as reasonable consumers, were deceived and misled by Defendant's conduct.

84.    Defendant's unlawful, unfair, and fraudulent business practices, and unfair, deceptive, untrue, and/or misleading advertising presents a continuing threat to the public in that Defendant continues to falsely represent that consumers may cancel their service plans at any time and receive a refund, when in fact Defendant will not honor cancellation requests.

85.    Defendant engaged in these unlawful, unfair, and fraudulent business practices, which were motivated solely by Defendant's self-interest with the primary purpose of collecting unlawful and unauthorized monies from Plaintiff and all others similarly situated, thereby unjustly enriching Defendant.

86.    Such acts and omissions by Defendant are unlawful and/or unfair and/or fraudulent and constitute violations of the Bus. & Prof. Code §§ 17200, *et seq.*, Plaintiff reserves the right to identify additional violations by Defendant as may be established through discovery.

87.     As a direct and proximate result of the aforementioned acts and representations, Defendant received and continues to receive unearned commercial benefits at the expense of its competitors and the public.

88.     As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant has been. and will continue to be. unjustly enriched by the receipt of ill-gotten gains from customers, including Plaintiff and Class Members, who unwittingly provided money to Defendant as a result of Defendant's fraudulent misrepresentations.

89.     Plaintiff has suffered an "injury in fact" because Defendant received Plaintiff's money as a result of Defendant's false representations.

90.     In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which are available to prevailing plaintiffs in class action cases such as this.

## COUNT II: VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500

91.     Plaintiff re-alleges and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

92.     Plaintiff brings this claim individually and on behalf of all others similarly situated for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

93.     Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

94.     Defendant engaged in a scheme of misrepresenting its service plans, in that Defendant represented to consumers that they could cancel their service plans at any time and receive a refund. Such practice misrepresented the nature of the service plans and Defendant's cancellation policy. Defendant's advertisements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code §§ 17500, *et seq.* in that the product branding and advertising was intended to induce customers to purchase the service plans. Defendant knew or should have known its conduct was unauthorized, inaccurate, and misleading.

95.     Defendant violated 17500, *et seq.* by misleading Plaintiff and the Class into believing that they could cancel their service plans at any time and receive a refund. However, Defendant did not honor, and had no intention of honoring, consumers' cancellation requests.

## COUNT III: BREACH OF CONTRACT

94.     Plaintiff includes by reference all previous paragraphs as if set forth herein.

95.     A contract existed between Plaintiff and Class Members and Defendant as described herein.

96.     Plaintiff and Class Members performed all obligations arising from the contract.

97.     Defendant, however, failed to perform all obligations arising from the contract.

98.     As a result, Plaintiff suffered harm.

99.     Therefore, Defendant is liable to Plaintiff and Class Members for their breach of the contract as described herein, thus entitling Plaintiff to recompense.

# COUNT IV: VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

100.  Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

101.  Defendant's actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770 to the extent that Defendant violated the following provisions of the CLRA:

    a.    Passing off goods or services as those of another; Cal. Civ. Code § 1770(1);

    b.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; Cal. Civ. Code § 1770(7);

    c.    Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);

    d.    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and

    e.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

102.  On or about April 18, 2022, through his Counsel of record, using certified mail with a return receipt requested, Plaintiff served Defendant with notice of their violations of the CLRA (attached hereto as EXHIBIT C), and asked that Defendant correct, repair, replace or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and

pointed Defendant to the provisions of the CLRA that Plaintiff believes to have been violated by Defendant. Defendant has not replied to this correspondence in a satisfactory manner, and have thereby refused to timely correct, repair, replace or otherwise rectify the issues raised therein.

103.    Plaintiff concurrently files with this First Amended Complaint an Affidavit of Venue as required by the CLRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as follows:

A.    For an order awarding, as appropriate, damages to the Plaintiff and The Classes;

B.    For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent The Classes;

C.    For an order that the Court certify Plaintiff to serve as the class representative in this matter;

D.    For an order that the Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the claims asserted herein;

E.    For an order requiring Defendant to immediately cease and desist from selling the service plans in violation of law and enjoining Defendant from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell the service plans in the unlawful, unfair, and deceptive manner described herein;

F.    For an order awarding attorneys' fees and costs;

G.    For an order awarding punitive damages;

H.    For an order awarding pre-judgment and post-judgment interest; and

I.    For such other and further relief as this Court find just, equitable and proper, including, but not limited to, the remedy of disgorgement.

**JURY DEMAND**

Plaintiff and the Class Members are entitled to, and hereby demand, a trial by jury.

**<u>PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY</u>**

Respectfully submitted this 28th of June, 2022.

By:    <u>s/ Todd M. Friedman</u>
Todd M. Friedman, Esq.
Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**



**PLAN # 44798433**
**Issued To:**ALAN KHEEL
**VEHICLE IDENTIFICATION NUMBER:** 1C4RJFCG4JC458124

Your vehicle is covered by:

- 8/75 MAXIMUM CARE
  (Option Code: WMT875N    Form Num: NM515)

**8/75 MAXIMUM CARE**
EFFECTIVE: 08/18/2018
EXPIRES: 08/17/2026 OR 75,000 MI
SELLING DEALER: 60573 CR CHRYSLER DODGE JEEP RAM

---

### Key Terms

*Covered Vehicle or Vehicle - means the vehicle that has the above referenced vehicle identification number
*Dealer - means "authorized FCA US LLC franchise dealer", which includes dealers of the Chrysler, Dodge, Jeep, Ram, SRT, FIAT and ALFA ROMEO vehicle lines
*FCA US Vehicle - means "Chrysler, Dodge, Jeep, Ram, SRT, FIAT or ALFA ROMEO brand vehicles only"
*Mopar Vehicle Protection (MVP) Plan - Is defined as a Plan offered and issued by FCA Service Contracts LLC.
*Plan - means this "8/75 MAXIMUM CARE" Service Contract
*we, us, our - means FCA Service Contracts LLC, formerly known as Chrysler Group Service Contracts LLC the entity obligated to perform the obligations of this contract. FCA Service Contracts LLC's contact information is PO Box 2700, Troy, MI 48007-2700; phone: 1-800-521-9922. FCA Service Contracts LLC is a wholly-owned subsidiary of FCA US LLC, formerly known as Chrysler Group LLC.
*you, your - means the Plan purchaser

©2021 FCA US LLC. All Rights Reserved. Chrysler, Dodge, Jeep, Ram, Mopar and SRT are registered trademarks of FCA US LLC. ALFA ROMEO and FIAT are registered trademarks of FCA Group Marketing S.p.A., used with permission.

---

**A SERVICE CONTRACT:** This Plan is a service contract between you and us. The Plan protects you against major repair bills should a Vehicle component covered by the Plan fail due to defects in material or workmanship. This Plan is not insurance and is not part of the manufacturer's warranty.  We are solely responsible (liable) for fulfillment of the provisions of the Plan.

Obligations of the provider under the Plan are backed by the full faith credit of the provider.

**No Dealer, Dealer employee or our employee has the authority to modify or change any provision of this Plan. The express provisions of this Plan outline the sole benefits which we are obligated to provide; no other coverage is implied hereunder, and no coverage can be implied due to an oral or written misrepresentation, error or omission.**

IMPORTANT!  The maximum benefit amount should a covered component of the Vehicle fail will be THE TOTAL COST OF THE REPAIRS PER VISIT LESS THE DEDUCTIBLE, OR THE CASH VALUE OF THE VEHICLE, WHICHEVER IS LESS! The cash value of the Vehicle will be determined at the time of the covered repair and will be the average retail value as listed in the current NADA Used Car Pricing Guide. If at any time the repair costs for covered component(s) exceed the Vehicle's cash value, your final Plan benefit will be our payment of the Vehicle's cash value rather than the repair costs. Plan coverage and benefits will terminate automatically and immediately pursuant to this provision and we will have no further obligations of any kind in respect to the terminated Plan.

This issuance of this Plan, unless otherwise prohibited by law, shall not be deemed as a waiver of our right, or considered a restriction of our right to refuse to pay for service and/or to cancel the Plan should it subsequently be discovered that the vehicle for which the Plan was purchased was not eligible for Plan coverage.

NOTE: Place this Plan in your glove compartment or other secure place in the Vehicle. While your Vehicle is covered by this Plan, your Vehicle also may be covered by the manufacturer's warranty. For manufacturer's warranty coverage details, please refer to your warranty information booklet. THIS PLAN DOES NOT COVER ANY REPAIRS OR SERVICES WHICH ARE COVERED BY THE MANUFACTURER'S WARRANTY.

**OBTAINING PLAN SERVICE:** To obtain service under this Plan, you should return and present this contract to the Dealer who sold you the Plan. In the event you cannot return the Vehicle to the selling Dealer for service, you may request service from any Dealer within the United States, Canada, Guam, Puerto Rico or Mexico.

**IMPORTANT! SERVICE OBTAINED FROM A PERSON OTHER THAN AN AUTHORIZED DEALER IS NOT REIMBURSABLE UNDER THIS PLAN UNLESS AUTHORIZED BY US AND YOU RECEIVE AN AUTHORIZATION NUMBER BEFORE THE SERVICE IS PERFORMED. DEALERS CANNOT AUTHORIZE REPAIRS UNDER THIS PLAN. Authorized repairs will be made *using remanufactured parts*. If remanufactured parts are not available, the Dealer will use new parts.**

**ELIGIBLE VEHICLES:** New vehicles covered by a 5 Year/60,000 Mile or longer Powertrain Warranty, including FIAT and Alfa Romeo vehicles covered by a 4 Year/50,000 Mile Basic Warranty, are eligible within 36 months of the in-service date and 36,000 miles. Excludes ProMaster vehicles.

**NOTE:** Eligibility has been extended to 48 months of the in-service date and 48,000 miles on this option code.

**NOT ELIGIBLE:** The following are **not** eligible for **any** Vehicle Protection Plan: Vehicles registered outside of the United States, Guam and Puerto Rico; motor homes; taxis (including vehicles used to transport passengers in return for payment, i.e. Uber, Lyft); vehicles converted from two to four-wheel drive; vehicles altered or converted from the original manufacturer's specifications; severe off-road use; vehicles not used in accordance with manufacturer's specifications for payload and/or towing capacity; vehicles with a gross weight (G.V.W.) of over 14,000 pounds; vehicles equipped with NorthStar engines; vehicles where the manufacturer warranty has been voided or restricted by the manufacturer; vehicles that have been declared to be a total loss by any insurance company, are rebuilt after being declared a total loss, or are issued a title indicating that the vehicle is designated as 'salvage', 'junk', 'rebuilt' or words of similar impact.

The following are **not** eligible for **this** Vehicle Protection Plan: Limousines; emergency vehicles (ambulance, fire, police pursuit; police patrol); vehicles used for security patrol; right-hand drive vehicles (except vehicles manufactured by FCA US LLC); vehicles used for postal service (except vehicles manufactured by FCA US LLC); vehicles used for dump truck; vehicles used for tow service (i.e. tow trucks); vehicles equipped with a diesel engine (except vehicles manufactured by FCA US LLC, Ford Motor Company, General Motors and Volkswagen); vehicles that operate on other than gasoline or diesel fuel systems (i.e. natural gas, electric); vehicles equipped with engines greater than 8 cylinders (except vehicles manufactured by FCA US LLC); vehicles used for commercial use*; ALL cab and chassis vehicles; vehicles ordered with box delete option or where the box has been removed; vehicles with dual rear wheels if used for commercial purposes.

*Commercial use includes but not limited to: Delivery, service or repair work, landscaping and grounds maintenance, shuttle service, snow removal.

**NOTE:** If for any reason, your vehicle is **not** eligible for **this** plan, contact your selling dealer for other plans that your vehicle may be eligible for.

**WHEN PLAN COVERAGE STARTS AND ENDS:** Plan coverage begins on the date you purchased the Plan for: (i) a Vehicle component not covered by the manufacturer's warranty; (ii) Trip Interruption; (iii) Car Rental in respect to covered repairs when a replacement vehicle is not otherwise provided; and (iv) Taxi Reimbursement. Plan coverage begins on the date the manufacturer's warranty ends for: (i) any Vehicle component covered under the manufacturer's warranty; and (ii) Roadside Assistance.

**Plan coverage expires on 08/17/2026 or when the Vehicle odometer reads 75,000 mile(s) (whichever occurs first). This Plan provides coverage up to 8 years or 75,000 miles (whichever occurs first) from the Vehicle's original in-service date. The original in-service date begins when the Vehicle is sold, which is the same as the manufacturer's warranty date. THE 8 YEAR PLAN PERIOD AND 75,000 MILEAGE LIMITATION INCLUDES TIME COVERAGE UNDER AND MILEAGE TRAVELED WITHIN THE MANUFACTURER'S WARRANTY PERIOD.**

**$200.00 DEDUCTIBLE:** You are responsible to pay only the first $200.00 of the total cost of the Vehicle's covered component repairs performed during each repair visit. Repairs not covered by the Plan are your responsibility. When state and/or local taxes are imposed upon the cost of repairs, you agree to pay state and/or local taxes in addition to the deductible.

**COVERAGE UNDER THE PLAN: WHAT IS COVERED?** The Plan will pay the total cost (parts and labor) less a deductible per visit, to correct any of the following mechanical failures, caused by a defect in materials or workmanship of a covered component and are not covered by the vehicle's factory warranty.  The only exceptions are those listed under "What is not covered by the Plan".

**COMPONENTS COVERED BY THE PLAN INCLUDE (BUT ARE NOT LIMITED TO):**

**GASOLINE ENGINE:**  Cylinder Block and all Internal Parts; Cylinder Head Assemblies; Timing Case, Timing Chain, Timing Belt, Gears and Sprockets; Variable Valve Timing Solenoids and Actuators; Harmonic Balancer; Oil Pump, Water Pump and Housing; Intake and Exhaust Manifolds; Flywheel with Starter Ring Gear; Core Plugs; Valve Covers; Oil Pan; Oil Filter Adapter Housing; Turbocharger Housing and Internal Parts; Turbocharger Wastegate Actuator; Supercharger; Fuel Injectors **(excluding clogged injectors);** Serpentine Belt Tensioner; Seals and Gaskets.

**DIESEL ENGINE:**  Cylinder Block and all Internal Parts; Cylinder Head Assemblies; Timing Gears and Cover; Harmonic Balancer; Oil Pump; Water Pump and Housing; Intake and Exhaust Manifolds; Core Plugs; Valve Covers; Oil Pan; Turbocharger Housing and Internal Parts; Fuel Injection Pump and Injectors **(excluding clogged injectors);** High Pressure Oil Pump; High Pressure Oil Rails; Seals and Gaskets.

**TRANSMISSION:**  Transmission Case and all Internal Parts; Torque Converter; Drive/Flex Plate; Transmission Range Switch; Transmission Control Module; Bell Housing; Oil Pan;  Gear Shifter and Shifter Mechanism; Seals and Gaskets.
**NOTE:  MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME.**

**FOUR-WHEEL DRIVE (4x4):**  Transfer Case and all Internal Parts; Axle Housing and all Internal Parts; Axles Shafts; Axle Shaft Bearings; Drive Shafts Assemblies (Front and Rear); Drive Shaft Center Bearings; Wheel Bearings; Universal Joints and Yokes; Disconnect Housing Assembly; Seals and Gaskets.

**ALL-WHEEL DRIVE (AWD):**  Power Transfer Unit and all Internal Parts; Viscous Coupler; Axle Housing and all Internal parts; Constant Velocity Joints and Boots; Rear Driveline Module; Drive Shaft and Axle Shaft Assemblies; Wheel Bearings; Differential Carrier Assembly and all Internal Parts; Output Bearing; Output Flange; End Cover; Overrunning Clutch; Shift Motor; Vacuum Motor; Torque Tube; Pinion Spacer and Shim; Seals and Gaskets.

**FRONT WHEEL DRIVE:**  Transaxle Case and all Internal Parts; Axle Shaft Assemblies; Constant Velocity Joints and Boots;  Shifter Mechanism;  Wheel Bearings; Differential Cover; Oil Pan; Transaxle Speed Sensors; Transaxle Solenoid Assembly; PRNDL Position Switch; Transaxle Electronic Controller; Torque Converter; Seals and Gaskets
**NOTE:  MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME.**

**REAR WHEEL DRIVE:**  Rear Axle Housing and all Internal Parts; Axle Shafts; Axle Shaft Bearings; Drive Shaft Assemblies; Drive Shaft Center Bearings; Universal Joints and Yokes; Seals and Gaskets.

**STEERING:**  Steering Gear Housing and all Internal Parts; Power Steering Gear; Inner Tie Rods; Outer Tie Rods; Drag Link; Idler Arm; Pitman Arm; Steering Stabilizer; Power Steering Pump and Reservoir; Power Steering Motors; Power Steering Pump Cooler; Steering Shafts (upper and lower); Steering Shaft Lower Coupling; Telescoping Steering Column Motors; Rack and Pinion Assembly; Rack and Pinion Boots; Electronic Steering Motor; Seals and Gaskets.

**AIR CONDITIONING/HEATING:**  Factory or Manufacturer-authorized air conditioning installations only.  Air Conditioning Compressor; Clutch; Coil; Condenser; Front Evaporator; Rear Evaporator; Receiver-Drier; Expansion Valve; Hoses and Lines; Low Pressure Cut-off Switch; High Pressure Cut-off Switch; Clutch Cycling Switch; Front Instrument Panel Control Assembly;  Rear Instrument Panel Control Assembly; Power Module; Blend Air Door Actuators and Motors; Housing; Front and Rear Air Conditioning/Heater Blower Motor; Blower Motor Resistor; Heater Core; Seals and Gaskets.

**ENGINE COOLING & FUEL:**  Cooling Fan, Clutch and Motor; Radiator; Coolant Temperature Switch; Fuel Pump; Water Pump and Housing; Active Grille Shutter System; Fuel Tank Sending Unit; Fuel Pressure Regulator; Fuel Pressure Sensor; Fuel Tank and Lines; Serpentine Belt Tensioner; Engine Oil Cooler; Transmission Oil Cooler; EGR Cooler; Evaporative Emissions Leak Detection Pump and Monitor; Knock Sensor, Oxygen Sensor, Emissions Maintenance Reminder Module; Intake Air Temperature Sensor, Vapor Canister and Hoses; Seals and Gaskets.

**FRONT SUSPENSION:** Shocks; Shock Mounts; Struts; Strut Mounts, Bushings and Bearings; Upper and Lower Control Arms; Control Arm Bushings; Thrust Arms; Upper and Lower Ball Joints; Coil Springs; Torsion Bars; Air Suspension System; Front Wheel Bearings.

**REAR SUSPENSION:** Rear Leaf Springs; Rear Coil Springs; Auxiliary Springs; Spring Interliner; Spring Bushing; Spring Shackle; U-Bolt Rear Spring; Spring Hanger; Axle Trac Bar; Lateral Link Arm; Shocks; Shock Mount Plate; Struts; Strut Mounting Plates; Strut Bushings; Rear Trailing Arm Assembly; Rear Torsion Arms; Rear Torsion Bars; Rear Stabilizer/Sway Bar; Rear Stabilizer/Sway Bar Link; Rear Stabilizer/Sway Bar Bushing; Rear Wheel Bearings.

**BRAKES:** Master Cylinder, Assist Booster; Wheel Cylinders; Disc Brake Calipers and Pistons; Brake Lines, Hoses, Fittings; Proportioning Valve; Seals and Gaskets.
**NOTE: BRAKE SHOES, PADS, ROTORS, AND DRUMS ARE NOT COVERED AT ANY TIME.**

**ANTI-LOCK BRAKES (ABS):** Brake System's Hydraulic Assembly; Pump Motor Assembly; Controller; Sensors and Relays; Seals and Gaskets.

**ELECTRICAL:** Starter Motor and Solenoid; Generator (Alternator); Engine Control Module - (Single Module Engine Controller) (SMEC); Powertrain Control Module; Distributor; Ignition Module; Ignition Coil; Coil Pack Assembly; Voltage Regulator; Horn and Horn Pad; Transmission Control Module; All Wiring Harnesses; Electronic Fuel Injection System **(excluding clogged injectors);** Windshield Wiper Motor; Rear Window Wiper Motor; Wiper Control Module; Manually Operated Electrical Switches; Neutral Safety Switch; Temperature Sending Unit/Switch; Oil Level and Oil Pressure Sending Unit/Switch; Body Computer; Body Control Module; Factory Installed Radio, Speakers and Rear Entertainment Systems (Includes CD and DVD Player); Factory Installed Navigation Systems (excludes navigation disc); Audio Amplifier; Height Adjustment Compressor; Gateway Module;  Ignition  Module, Factory Installed U-Connect System.
**NOTE: HEADPHONES ARE NOT COVERED AT ANY TIME.**

**INSTRUMENTATION:** Electronic Instrument Cluster; Amp/Voltmeter Gauge; Fuel Gauge; Temperature Gauge; Tachometer; Oil Pressure Gauge; Turbo Gauge; Speedometer.

**KEY FOB:** Subject to the limitations in this provision, the Plan provides (i) coverage for up to three key fob repairs or replacements, and (ii) a total key fob coverage benefit of $600, which limit applies notwithstanding the cost per repair or per replacement of the key fob for the Covered Vehicle. Key fob coverage is available even if this component is lost or stolen, and this coverage is not subject to the deductible that applies to repair visits for covered components.
**NOTE: FAILURE OF A KEY FOB BATTERY DOES NOT CONSTITUTE A MECHANICAL FAILURE OF THE KEY FOB.**

**POWER GROUP:** Rear Window Defroster; Power Window Motors; Power Window Flex Track;  Power Antenna; Power Seat Motors; Power Door Locks and Linkage;  Power Sliding Rear Window Motor and Regulator (Trucks); Power Sliding Door Motors; Power Liftgate; Vacuum Pump.

**LUXURY GROUP:** Keyless Entry Sensors and Receiver/Module; Trip Computer; Message Center; Overhead Electronic Vehicle Information Center; Overhead Electronic Compass/Temperature; Power Sunroof Motor; Convertible Top Motor; Electric Mirror Motor and Controls; Cruise Control Servo; Headlight Door Motor; Concealed Headlamp Module; Park Assist Module; Park Assist Sensors; Back Up Assist Camera; Door Latches; Heated Seat Systems; Factory Installed Remote Start System; Heated Steering Wheel; In-Vehicle Wireless Charging Station; USB Outlets; 120V Outlets.

**ENGINE EMISSIONS:** Air Pump; Air Supply Hose; Leak Detection Pump; Evaporative System Detector/Monitor; Vapor Canister; Air Injection Valve; EGR Valve; EGR Cooler; Aspirator Tube; Fuel Tank Pressure Sensor; EGR Tube; Purge Solenoid; Knock Sensor; Oxygen Sensor; Diesel Exhaust Fluid (DEF) System.
**NOTE: CATALYTIC CONVERTOR AND PARTICULATE FILTER ARE NOT COVERED.**

**SAFETY SYSTEMS:** Airbags **(excluding deployed airbags);** Impact Sensors; Occupancy Sensors; Seatbelt Retractors; Seat Belt Buckles; Modules; Sensors; and Switches.
**NOTE: AIR BAGS THAT HAVE BEEN DEPLOYED ARE NOT COVERED AT ANYTIME.**

**MOPAR ACCESSORIES:** All electrical and mechanical Mopar accessories are covered provided they were installed by an authorized Dealer; Audio Systems (including Compact Disc Players); Sirius Satellite Radio; Speed Control; EVS (Security Systems); Clocks; Remote Trunk Release; Transmission Oil Cooler; Remote Control Outside Mirrors; Power Sliding Rear Window Assembly (Trucks); Rear Seat Video Entertainment Systems (including DVD Players); Remote Start System (excluding transmitters); MoparConnect.
**NOTE: MOPAR PERFORMANCE PARTS ARE NOT COVERED AT ANY TIME**

**MOPAR LIFT KIT COVERAGE:** If you purchased this coverage as shown on the front page, you have coverage for Mopar lift kits and related parts that are professionally installed, including performance parts pertaining to the lift kit (maximum 4 inch combined lift). If the Mopar Lift Kit coverage is not indicated on the front page, there is no coverage.

**OTHER PLAN BENEFITS:** The Plan also provides the following Trip Interruption, First Day Rental, Rental Allowance, Taxi Reimbursement, and Roadside Assistance benefits.

**TRIP INTERRUPTION:** The Plan will pay up to $1,000 for lodging, meals, and emergency transportation such as taxi, bus, or airline for you and your family if (1) your vehicle is inoperable due to a failure covered under this Plan or under the factory warranty, and (2) you are more than 100 miles from the address of record. Lodging, meals and car rental receipts must accompany a copy of repair bill and must be either faxed to 833-990-0064 or emailed to MVPWarrantyClaim@fcagroup.com. If this is not an option, you can mail to Vehicle Protection, P.O. Box 2700, Troy, Michigan 48007-2700. **Please be advised that the mail in process is a longer process.**

**FIRST DAY RENTAL:** First Day Rental Allowance provides up to $35.00 car rental allowance if the Vehicle is to be serviced for any mechanical repair or maintenance service. Please note: Excludes rental for bodywork to the exterior sheet metal/composite panel or collision repairs.

**RENTAL ALLOWANCE:** Rental Allowance will pay up to $35.00 per day for a rental any time repairs take overnight, and a component covered by the Plan or the manufacturer's Basic or Powertrain Warranty fails.

The Plan will not pay for rental charges for a vehicle that is awaiting service or parts unless the vehicle is inoperable due to a mechanical failure of a covered component, or unless continued operation would cause further damage.

The rental vehicle must be obtained from a Dealer. If a Dealer does not have rental vehicles available, you may obtain one from a licensed rental agency. Rental coverage is subject to state and local laws and policies imposed by the rental agency. Rental charges in excess of the amount allowed by the Plan are your responsibility. The Plan is not responsible for any refusal of a rental agency to rent a vehicle to you.

**Total Rental Allowance per occurrence is a maximum of 5 days or $175.00.**

**TAXI REIMBURSEMENT:** Coverage starts on the date you purchase the Plan. The Plan provides up to $35.00 for taxi cab fare, in lieu of First Day Rental if the vehicle is to be serviced for any same day mechanical or maintenance service.

When a loaner car is not available, or you are not eligible for a rental car, the Plan will pay up to $35.00 per day for taxi service, in lieu of car rental, any time mechanical repairs take overnight.

Taxi receipts must be from a licensed taxi service provider. Taxi charges in excess of the amount allowed by the Plan are your responsibility.

**Total Rental/Taxi Service Allowance per occurrence is a maximum of 5 days or $175.00.**

**ROADSIDE ASSISTANCE***

**NOTE: YOU MUST CALL 888-517-4500 FOR THIS SERVICE.**

The Plan provides assistance due to a disablement caused by any mechanical failure and in addition, the Plan provides coverage for such items as towing to the nearest Dealer or authorized repair facility, flat tire change (with your good spare), battery jump, out of gas delivery (maximum 2 gallons), lockout service i.e. keys locked in car or frozen lock, to a maximum of $100, per occurrence. Any expense beyond $100 is your responsibility at the time and site of service. Towing assistance will be dispatched only for mechanical disablements which renders the vehicle inoperative. (See exclusions under "THE PLAN WILL NOT COVER.")

This service is provided to you as part of your Plan to minimize any unforeseen vehicle operation inconvenience and is available 24 hours per day, 365 days per year.

**HOW TO USE ROADSIDE ASSISTANCE*:** All required towing, roadside assistance, lockout, and other roadside assistance services described previously **MUST BE ARRANGED AT TIME OF OCCURRENCE** through Roadside Assistance by calling **888-517-4500**. You should be prepared to provide the representative with your name, your Plan number, vehicle license plate number, your location including the phone number you are calling from and a brief description of the problem.

In some cases, Roadside Assistance may authorize you or your Dealer to arrange for local service and will provide a reference number to do so. Your Plan will in these instances provide reimbursement of up to $100 maximum per Roadside Assistance incident, provided that the claim contains: (A) A valid original receipt of payment from the tow/repair facility for the services rendered (Claims which contain other than original receipts may be denied.); (B) The Roadside Assistance reference number; and (C) Your valid Plan number. All Roadside Assistance claims that meet requirements should be mailed or faxed to:

Roadside Assistance
P.O. Box 9145
Medford, MA 02155
Attn: Claims Department
888-517-4500
FAX: 1-781-658-2691

ROADSIDE ASSISTANCE WILL NOT COVER SERVICES WHICH ARE SOLICITED WITHOUT FIRST CONTACTING ROADSIDE ASSISTANCE FOR PRIOR AUTHORIZATION.

*All Roadside Assistance services are provided through Cross Country Motor Club, Inc., Medford, MA 02155, except in Alaska, California, Hawaii, Oregon, Wisconsin and Wyoming where services are provided through Cross Country Motor Club of California, Inc., Thousand Oaks, CA 91360. Both collectively referred to as "CCMC". Phone number: 888-517-4500. CCMC acts as a dispatcher of referral service to independent contractors that provide the roadside assistance service. Accordingly, CCMC assumes no responsibility for the acts, errors, omissions, negligence, misconduct of such persons and/or entities. All persons availing themselves of the benefits of Roadside Assistance are to look solely to such persons and/or entities for liability arising in connection therewith, and not to CCMC.

**DIAGNOSTIC CHARGES:** You may be asked to authorize disassembly and/or diagnostics at the time your Vehicle repair order is written. Your Plan covers disassembly and/or diagnostic charges IF the cause of failure is a covered component under the terms of the Plan. If the repair is not covered by the Plan, you will be responsible for paying the disassembly and/or diagnostic charges and non-covered repairs.

**YOUR ADDITIONAL RESPONSIBILITIES: It is your responsibility to properly operate, care for and maintain the Vehicle as prescribed in the owner's manual supplied by the manufacturer. If you fail to properly operate, care for and maintain the Vehicle as prescribed in the owner's manual supplied by the manufacturer, we may deny your claim under the Plan. You should retain all maintenance records and receipts to avoid any misunderstanding as to whether or not the maintenance services were performed as required.**

**We reserve the right to inspect the Vehicle, investigate circumstances relating to the requested repairs in any manner, or demand proof of maintenance BEFORE repairs may begin or are authorized.**

**GOVERNING LAW:** Except where prohibited by law, this contract will be governed by Michigan law.

**THE PLAN WILL NOT COVER, OR APPLY TO LOSS OR EXPENSE RESULTING FROM:**

- **Repairs or replacement of any component covered by any of the Vehicle manufacturer warranties, Certified Warranty, part manufacturer warranties or recall policies; roadside assistance, loaner vehicles or other services which are eligible to be covered by the Vehicle's manufacturer warranty or marketing programs;**
- **Repairs required as a result of other than a manufacturing defect (such as a design defect or normal wear);**
- **Repair or replacement of any covered component when it has been determined that the condition existed prior to purchasing the Plan;**
- **Plan benefits where the Vehicle odometer reading has been stopped or altered and/or the Vehicle's actual mileage cannot be readily determined;**
- **Brake pads, shoes, rotors and drums are not covered at any time (regardless of cause of failure);**
- **Reimbursement of services/benefits that exceed the total number of services/allowance included in Plan Coverage;**
- **Battery and cables; any battery for a component; spark plugs and wires; lights (bulb, sealed beams, lenses); suspension alignment; wheel balancing; wiper blades; catalytic converter, particulate filter and any other exhaust system components; heat shields and exhaust hangers; throttle body cleaning; evaporator deodorizing; carbon cleaning;**
- **High voltage battery is not covered at any time (regardless of cause of failure);**
- **Repairs due to any alterations or modifications to the Vehicle not approved or recommended by the manufacturer, including but not limited to: (a) failure of any custom or add-on / aftermarket part (unless listed as a specific covered**

part); (b) emissions and/or exhaust systems modifications; engine modifications, transmission modifications, and/or drive axle modifications, which includes any performance modifications; (c) oversized/undersized tires; (d) all frame or suspension modifications; (e) aftermarket lift kits; (f) Mopar lift kits (unless you have purchased this coverage as shown on the first page);

- Lift kits that exceed four (4) inches unless you have purchased Mopar Lift Kit Coverage as shown on the first page; repairs to covered components that are the direct result of the failure of a lift kit that exceeds four (4) inches unless you have purchased Mopar Lift Kit Coverage as shown on the first page;
- Repairs to covered components that are the direct result of the failure of alterations or modifications not recommended by the manufacturer;
- Plan benefits necessary as a result of (a) failure to properly care for or maintain the Vehicle; (b) fire, accident, abuse, vandalism, negligence, Acts of Terrorism or Act of God including but not limited to the Vehicle rendered inoperable due to snow, ice or flood; (c) failure to properly operate the Vehicle; (d) Vehicles that have been used or are being used for competitive speed events such as races or acceleration trials; (e) pulling a trailer that exceeds the rated capacity of the Vehicle or failure to adhere to the requirements for vehicles used to pull a trailer as outlined in the owner manual supplied by the manufacturer; (f) tampering with the emission system or with any parts that could affect that system; (g) use of dirty fluids, or fuels, refrigerants or other fluids which are not recommended by the manufacturer; (h) failure due to fluid contamination or sludge; (i) modifications not approved or recommended by the manufacturer; (j) overloading rated payload capacity of the Vehicle; (k) damage incurred by off-road usage; (l) rust, salt, corrosion, overheating, water intrusions/leaks, acid rain, chemicals, tree sap, hail, flood, lightning, fire, windstorm, earthquakes or other environmental causes or acts of nature;
- Fasteners, bolts and attaching hardware that does not attach a covered component to another covered component;
- Repairs to a covered component where the component has been restricted by the manufacturer; repairs that are the direct result of the failure of a component that has been restricted by the manufacturer;
- Repairs caused by pre-ignition detonation, pinging, improper/contaminated fuel including fuels containing more than 10% ethanol (if the engine was not manufactured for this mixture);
- Plan service obtained from other than a Dealer unless authorization is first received from us. FCA US Vehicles must return to a FCA US LLC Dealer for Plan covered repairs; (Dealers cannot authorize repairs.)
- Repairs required as a result of use of other than the Vehicle manufacturer's parts during the term of the Plan, unless authorized by us;
- Repairs to a covered component caused by the failure of a non-covered component and/or an aftermarket installation not performed by a Dealer, or any outside installation of "salvage or junk" components in conjunction with an insurance or damage claim. All part installations to satisfy such claims must be with new or factory authorized remanufactured components and parts;
- Bodily injury or property damage arising or allegedly arising out of a defect in the design, manufacture, materials or workmanship of a covered component;
- Any fines, fees or taxes which are associated with impound towing as a result of actual or alleged violation of any laws or regulations;
- Plan benefits to Vehicles operated outside of the United States, Canada, Guam, Puerto Rico and Mexico;
- Plan benefits to Vehicles registered outside of the United States, Guam and Puerto Rico;
- Exterior - tires; trim; name plates; appliques; body sheet metal; glass; plastic lenses; paint; bright metal; bumpers; side-view mirrors (glass/ housing); wheel covers; steel wheels; aluminum wheels; rusted or frozen rims; weather strips; rust; water leaks; restricted drain tubes; wind noises; all outer body panels; spoilers; plastic and fiberglass body parts; vinyl tops; convertible top fabric; repairs or damage caused by environmental factors such as acid rain, tree sap, salt or ocean spray;
- Interior - trim; carpet; upholstery; dash pad; door and window handles; knobs; buttons; moldings; arm rests and head liner; cargo cover; cosmetic appearance; torn/worn/soiled;
- Mechanical - manual clutch assembly; clutch disc, pressure plate, clutch release bearing and pilot bearing (manual transmission); damage to flywheel as a result of a clutch failure; repairs to snow plows, winches and trailer hitches regardless of their installation;
- Cost or expenses for teardown, rental, inspection or diagnosis of failures not covered by the Plan;
- Shop supplies, waste disposal fees and materials;
- Repairs to any Vehicle where the title has become branded or the Vehicle has become restricted by the manufacturer after the purchase of the Plan;
- Maintenance services specified in the owner's manual and the parts used in connection with such services;
- Repairs to a covered component caused by the failure of a non-covered component and/or an aftermarket installation not performed by an authorized Dealer;
- Repairs or replacement to components covered by the Hybrid System Limited Warranty (refer to Warranty booklet for details);

- **Hybrid components: hybrid charging system; hybrid electric cooling system; hybrid power inverter system;**
- **Portable Units including but not limited to - headphones; I-Pods; GPS units; DVD players; laptop computers; cellular phones; any hand-held device; Navigation DVD; spare tire compressor and tire sealant;**
- **Repair or replacement of Performance parts, Performance enhancing parts, repairs to covered components that are the direct result of failure of a performance part (except for parts pertaining to lift kits if you purchased Lift Kit coverage as shown on the first page);**
- **Any economic loss of any kind, including but not limited to rental car expenses, consequencial damages, incidental damages, or other losses that relate in any manner to your use or loss of use of the Covered Vehicle.**

**CANCELLATION AND TRANSFER POLICIES:** During the term of the Plan, you have the option to:

- <u>**CANCEL**</u> the remaining Plan coverage and receive a full or pro-rata refund or;
- <u>**AUTHORIZE TRANSFER**</u> of the remaining Plan coverage to the 1st subsequent owner.

Note: Refer to the cancellation/transfer policy section below for details.

**CANCELLATION POLICY:** If you are the original purchaser of the Plan, and coverage under the Plan has not expired or been terminated, you may cancel if you have not authorized transfer of Plan coverage to a new owner. *To cancel the Plan you may take your Plan to any Dealer.* The Dealer will contact us to request termination of your contract.

If your Vehicle is repossessed or rendered a total loss and your Plan was financed with your vehicle, your rights under this Plan transfer to the lienholder. The lienholder is then responsible for requesting termination of the Plan through the Dealer where the Plan was purchased. If the Plan was not financed, any refund due will be paid to you by check in your name from Us.

If there is no Dealer in your area, you may email or fax your cancellation request along with your Plan Provisions, proof of payoff and current mileage on the Vehicle to:

Vehicle Protection
Cancellation Department
MVPCancellations@fcagroup.com
Fax # 833-990-0065

Please specify the Option Code(s) you wish to cancel. Option codes can be found on the first page of this document below Option Description.

On cancellation requests received* within the first 60 days from the original purchase date of the Plan, you will be refunded the full amount you paid for the Plan, provided no claims have been paid against the Plan. In the event claims have been paid, or requests received* after 60 days, your refund will be based on the full amount you paid for the Plan, less a pro-rata adjustment for time or mileage used, whichever is greater, less a cancellation fee as indicated below.

We reserve the right to cancel the Plan after issuance should it be discovered that: (a) the Vehicle is ineligible or has been modified/altered to make it ineligible after Plan coverage has been in effect; (b) failure of the customer to maintain the Vehicle as prescribed by the manufacturer; (c) the odometer has been tampered with or has not been repaired by the customer, (d) non-payment of premium or (e) the Vehicle is registered outside of the United States, Guam, and Puerto Rico. Your refund will be based on the full amount you paid for the Plan, less a pro-rata adjustment for the time or mileage used, whichever is greater, less claims paid.

**\*Requests Received - The cancellation refund will be based on the date we receive written notification of the cancellation request.**
**A cancellation refund check will be made payable and issued to you if no lien exists. Whenever a lien exists, the cancellation refund check will be made payable and issued to the lienholder.**

---

**CANCELLATION FEES**

(Applies to the state where the Plan was purchased)

| STATE | AMOUNT |
|---|---|
| Alabama | $25 Administration Fee. |
| California | $25 or 10% of the Contract Cost, whichever is less. |
| Hawaii | $50 Administration Fee. |
| Illinois | $50 or 10% of the Contract Cost, whichever is less. |
| New Hampshire | None. |
| New York | $50 Administration Fee. |
| North Carolina | $50 or 10% of the pro-rata refund amount, whichever is less. |
| Georgia | 10% of the unearned pro-rata premium - no Administration Fee. |
| Oklahoma | 10% of the unearned pro-rata premium not to exceed $75. If we cancel, 100% of the unearned pro-rata premium will be refunded. |
| All others | $75 Administration Fee. |

---

**TRANSFER POLICY:** The original purchaser may authorize transfer of coverage, provided the Plan has not been canceled. Remaining Plan coverage may be transferred to the first subsequent purchaser of the vehicle AT TIME OF VEHICLE SALE ONLY. Thereafter, the Plan is non-transferable and non-cancelable.

To transfer this service contract, complete the transfer form. Be sure to include your signature. This means you are authorizing transfer of Plan coverage to the new owner. Transfer requests will not be processed: (a) without the signature of the owner for whom these Plan Provisions were originally issued; or (b) if received after 60 days from the date of vehicle ownership change.

You may take your Plan with the completed transfer form and transfer fee, if applicable, to a <u>Dealer</u> to process the Plan transfer or mail to the following. Please be advised that the mail in process is a longer process.

**Vehicle Protection**
**Transfer Department**
**P.O. Box 2700**
**Troy, MI 48007-2700**

The transfer fee is as follows:

---

**TRANSFER FEES**

(Applies to the state where the Plan was purchased)

| STATE | AMOUNT |
|---|---|
| New Hampshire | None |
| All others | $50 |

---

• Any Plan financed on the Vehicle Protection Payment Plan is NOT transferable until the Plan is paid in full.
• Upon acceptance by us, you will be mailed a new set of plan provisions in your name confirming your transfer request.
• Warranty transfer fee may apply. Please refer to your owner's manual or ask your dealer for details.

**NEED HELP OR ASSISTANCE WITH YOUR PLAN?**
**IS YOUR ADDRESS UP-TO-DATE?**

**PLEASE ACCESS OUR SELF-SERVICE WEBSITE FOR PLAN COVERAGE AND FREQUENTLY ASKED**
**QUESTIONS AT:**
**www.moparvehicleprotection.com**

**You can also email or fax your question to:**
**Mopar Vehicle Protection**
**MVPMiscellaneous@fcagroup.com**
**833-990-0067**

Note:  All requests <u>must</u> contain your Name, Plan Number, and Vehicle Identification Number.

Toll-Free Telephone Assistance is Available
8:00 a.m. to 8:00 p.m. Eastern Time Monday through Friday
9:00 a.m. to 5:00 p.m. Eastern Time Saturday
1-800-521-9922 (in USA)
1-800-465-2001 (in Canada)

For 24-Hour Roadside Assistance Coverage
*Services dependent upon coverage purchased.
**1-888-517-4500**

| **TRANSFER FORM:**   SEE TRANSFER POLICY FOR DETAILS | | | |
|---|---|---|---|
| PLAN NO.<br>44798433 | VEHICLE IDENTIFICATION NO.<br>1C4RJFCG4JC458124 | OPTION CODE(S) | |
| FORM MUST BE FILLED<br>OUT COMPLETELY | CURRENT ODOMETER READING (OMIT<br>TENTHS) | CHECK MILES OR KILOMETERS<br>☐ MILES        ☐ KILOMETERS | |
| **TRANSFER** | TRANSFER THE REMAINING COVERAGE FOR THE LISTED VEHICLE TO THE PERSON NAMED BELOW.<br>ENCLOSED IS A CHECK OR MONEY ORDER FOR THE TRANSFER FEE AMOUNT. | | |
| TRANSFER FEE<br>AMOUNT * | CHECK OR MONEY ORDER<br>ENCLOSED (PAYABLE TO   ☐      ☐<br>FCA US LLC)   VISA   MASTER CARD | CREDIT CARD NO. | EXPIRATION DATE |
| NAME (PLEASE PRINT) | | AREA CODE & TELEPHONE NO. | |
| ADDRESS | | VEHICLE PURCHASER'S SIGNATURE | DATE OF<br>VEHICLE<br>PURCHASE |
| CITY, STATE & ZIP | | VEHICLE SELLER'S SIGNATURE | |

Notes:

Certain Options are not eligible for Transfer. Please refer to the "Transfer Policy" paragraph for "each
Plan Option" to verify transfer eligibility.

Transfer fee applies for each option being transferred.

Please print the "Option Code(s) that you want transferred to a new owner in the "Option Code" space
provided above.  Option Code(s) can be found on the first page of your Plan below Option Description.

**EXHIBIT B**

December 11, 2021

<u>VIA USPS Priority Mail Express</u>

Mopar Vehicle Protection
Cancelation Department
P.O. Box 2700
Troy, MI 48007-2700

      Re: Cancellation of Plan #44798433; 8/75 Maximum Care;
          Option Code: WMT875N ("Plan") **THIRD NOTICE**

Dear Mopar Vehicle Protection Cancellation Department,

I have contacted you three (3) times to cancel this Plan. Each time I have been ignored. This is the fourth and final attempt.

According to page 8 of my Plan, copy enclosed, under the heading "CANCELLATION POLICY," the Plan may be cancelled by emailing or faxing the cancellation request to: Vehicle Protection, Cancellation Department, <u>MVPCancellations@fcagroup.com</u>, Fax # 833-990-0065.

The new vehicle warranty on the 2018 Jeep I owned at the time, expired on August 18, 2021, and as explained by the agent who sold me the Plan just prior to the expiration, the Plan would take effect when the new vehicle warranty expired. However, two days later on August 20, 2021, I sold my Jeep to a dealer located 300 miles from where I live and did not transfer the Plan, knowing I could get a refund as promised by the agent. Obviously, I had no need for the Plan at that point.

On October 4, 2021, I emailed my cancellation request to the email address above as directed by the Plan. Having received no response, I sent a follow-up email on October 18, 2021. This time I copied myself to make sure it went through (it did). Copies of both emails are attached. No undeliverable notice was received for either.

Again, having heard nothing for two weeks, I sent the documents via fax on October 21, 2021, to the fax number above, as directed by the Plan. The fax went through as shown in the enclosed fax receipt. A copy of the full fax is attached. Again, no reply.

At 11:07am PT on November 11, 2021, I called Mopar Vehicle Protection at 800-521-9922, the number listed in the Plan under "Toll-Free Telephone Assistance." I spent 7 minutes on the phone with the customer service agent who provided zero assistance. I'm sure you have a log, but if not, I'd be happy to provide my cell phone records that show the call. Please don't blame the agent, I'm sure she was just following her training, which apparently is strong on the sell side, but non-existent on the after-sale honoring the contract side. The agent told me you don't accept faxes, notwithstanding that my contract on which the ink was barely dry states otherwise, and the fact that I had a receipt that showed my fax had gone through. The agent told me I could email the cancellation

Mopar Vehicle Protection
Cancelation Department
December 10, 2021
Page 2

and I told her that didn't work, twice. She told me it takes a while to process the refund
and to be patient. I told her all I wanted to get at that point was an acknowledgement that
my prior communication was received, or not, and I asked to be transferred to the
Cancellations Department to get that information. She said there is no way to do that,
they don't have a phone! I asked her if she could check and see through her system if my
request had been received and she said no. I asked to speak with her supervisor. After
putting me on hold for a while, she came back and said I couldn't speak with the
supervisor, but one would call me back within 24 hours. It's been three weeks and no
calls. I tried to be patient as the agent advised. My patience is now exhausted.

I did everything required by my Plan, also known as a <u>contract</u>. Mopar has ignored the
contract. Demand is hereby made that a refund for the full purchase price of $2,115.00
be sent to me within five (5) days of the date of this letter. If it is not, it will confirm
what I have come to suspect, and that is that Mopar has no intention of honoring the
contract, never had an intention to honor it, and is purposely acting in bad faith to stone-
wall my valid cancellation and provide me a refund as promised. I will then proceed
without further notice with all legal remedies available to me, including without
limitation, a lawsuit for breach of contract, fraud and conversion, for recovery of general
and punitive damages. I have also contacted a class action attorney who seems interested
in the case. Nothing herein should be construed as a waiver of any right or remedy, all
such rights and remedies being expressly reserved. Please govern your actions
accordingly.

Very truly yours,

Alan Kheel

**EXHIBIT C**

# Law Offices of Todd M. Friedman, P.C.

**ATTORNEYS FOR CONSUMERS**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
323-306-4234 Toll Free
866-633-0228 Facsimile
California Office
WWW.TODDFLAW.COM

E-mail: TFRIEDMAN@TODDFLAW.COM

Writer licensed in:
California

April 18, 2022

**Via Certified U.S. Mail**
**FCA US LLC**
**1000 Chrysler Drive**
**Auburn Hills, MI 48326**

**RE:     Alan Kheel-Confidential Settlement Communication Pursuant to FRE 408 and CEC 1152**

To Whom It May Concern:

     Please be advised that our office represents Mr. Alan Kheel ("Plaintiff") in pursuing class-action legal claims against FCA US LLC ("Defendant") for violations of the Consumer Legal Remedies Act ("CLRA"); the California Business and Professions Code §17200 ("BPC"); negligent misrepresentation; breach of express and implied warranty of merchantability; and unjust enrichment.

     Having been formally notified of our representation, we respectfully demand you not contact our client for any reason. Instead, please direct all future contact and correspondence to this office. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

     The purpose of this letter is to advise your company of its violations and to quickly resolve the matter of my client's right to compensation for the same.  Before additional damages accrue, including needless attorneys' fees, we should work together expeditiously to correct the inequity that occurred in connection with your company's handling of the matters detailed below. Thus, please accept this correspondence as notice pursuant to the CLRA, of FCA US LLC's violations thereof. Be advised, you have thirty (30) calendar days from the date of receipt of this notice, to correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of § 1770 of the CLRA, as further outlined below.

**Facts**
     Defendant markets and/or sells vehicle service plans, such as the service plans marketed and sold to Plaintiff and others similarly situated. Specifically, Defendant advertises its service plans as having a money back guarantee Defendant requires all consumers who purchase a service plan to enter into a written contract detailing the terms of the service plan. Defendant's service plan contracts with consumers, such as Plaintiff and others similarly situated, state that the consumer has the option to "CANCEL the remaining Plan coverage and receive a full or pro-

1

rata refund." Defendant's service plan contracts further state that consumers "may email or fax your cancellation request along with your Plan Provisions, proof of payoff and current mileage on the vehicle to" Defendant's cancellation department. Contrary to the representation, Defendant had no intention of allowing consumers, such as Plaintiff and others similarly situated, to cancel or receive a refund.

In or around July of 2021, Plaintiff spoke with an agent of Defendant to inquire about a service plan. Defendant's agent informed Plaintiff that the service plan came with a money back guarantee, such that Plaintiff would receive a full refund if he cancelled, for any reason, within the first 60 days of the service plan. If he cancelled after 60 days, he would receive a prorated refund. On or around July 29, 2021, Plaintiff entered into a contract for a service plan with Defendant. The service plan was set to going to effect on or around August 18, 2021. The service plan was for Plaintiff's 2018 Jeep Grand Cherokee, Vehicle Identification Number 1C4RJFCG4JC458124. On or around July 29, 2021, Plaintiff received confirmation of the terms of his service plan via email.

On or around September 30, 2021 Plaintiff sold his 2018 Jeep Grand Cherokee. As such, Plaintiff no longer had a need for the service plan he had purchased from Defendant. On or around October 4, 2021, Plaintiff emailed his cancellation request to Defendant's cancellation department, as instructed by the terms of his service plan. Defendant did not respond to this request. On October 18, 2021, Plaintiff emailed a second cancellation request to Defendant's cancellation department, as instructed by the terms of his service plan. Defendant did not respond to this request. On October 21, 2021, Plaintiff faxed a second cancellation request to Defendant's cancellation department, as instructed by the terms of his service plan. Defendant did not respond to this request.

Frustrated by Defendant's lack of response, Plaintiff called Defendant's customer service department on or around November 11, 2021. The customer service representative that Plaintiff spoke to informed him that Defendant does not accept faxes, despite the language to the contrary in Plaintiff's service plan. Moreover, the customer service representative was unable to confirm that Plaintiff's cancellation requests had been received, and instead instructed Plaintiff to be patient. On or around December 10, 2021, Plaintiff sent a letter to Defendant to express his frustration and further request a cancellation and refund of his service plan. Defendant did not respond to this letter.

## CLRA (*Cal. Civ. Code* §17500 et seq.) Violations

Among other things, the CLRA prohibits the following "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction to result or which results in the sale or lease of goods or services" to a consumer:

1. Advertising goods or services with intent not to sell them as advertised- *Cal. Civ. Code* §1770(9);

2. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *Cal. Civ. Code* §1770(7)

2

3. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; - *Cal. Civ. Code* §1770(14);

4. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. *Cal. Civ. Code* §1770(16)


Further, under the CLRA, a consumer may recover actual damages, an order enjoining any such practices that are prohibited by the CLRA, restitution of property, punitive damages and reasonably attorney's fees and costs. *Cal. Civ. Code* §1788 (a) and (d). By engaging in the conduct detailed above, Defendant violated Sections §1770(9) of the CLRA, thereby entitling Plaintiff to attorneys' fees and costs, and actual and punitive damages. Specifically, Defendant marketed its service plans as having a money back guarantee and having a particular cancellation policy, when in fact Defendant had no intention of honoring cancellation requests.

## CBPC (*Cal. Bus. Prof. Code* §17200)

The CPBC §17200 prohibits unlawful, unfair or fraudulent business acts or practices, and subjects anyone engaging in such conduct to a civil penalty of $2,500 for each violation thereof. *Cal. Bus. Prof. Code §§*17200 and 17206. Further, any person may bring an action to enjoin or restrain any violation of this act and recover actual damages resulting from such violations. *Cal. Bus. Prof. Code* §4381(b)-(c).

Defendant clearly violated the BPC by engaging in fraudulent, unfair *and* unlawful business practices. Defendant made a misrepresentation that amounts to fraudulent and unfair business practices. Further, as noted above, Defendant violated the CLRA, thus engaging in unlawful business practices. FCA US LLC conduct entitles Plaintiff to not only actual damages in the amount of the monies spent on the Grill, but statutory damages, and attorney's fees and costs.

Please review the violations set forth above and contact our offices immediately.


Best regards,

*Todd M. Friedman*

Todd M. Friedman, Esq.
Attorney at Law

Filed electronically on this 23rd Day of August, 2022, with:

United States District Court CM/ECF System.

Notification sent electronically on this 23rd Day of August 2022 to:

Hon. Andre Birotte Jr.

United States District Court

Central District of California

And all Counsel of Record as Recorded on the Electronic Service List

s/ Todd M. Friedman, Esq.

TODD M. FRIEDMAN